IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TAMMY PARHAM,            )
                                  )
          Plaintiff,          )
                                  )
     v.                       )       CIVIL ACTION NO.: 1:04cv0936-VPM
                                  )       [WO]
JO ANNE B. BARNHART,      )
Commissioner of Social Security,  )
                                  )
          Defendant      )

**MEMORANDUM OPINION AND ORDER**

Claimant Tammy Parham ["Parham"] has filed this action seeking review of a final decision by the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2004).   Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

**I.    FACTS AND PROCEDURAL HISTORY**

Parham claims that problems with her knees, particularly her right knee, as well as her wrists, left elbow and bladder, prevent her from working.  (R. 69-102).  She also complains of depression and believes that her obesity contributes to her alleged disability, though her testimony and medical records focus primarily on the problems she is having with her musculoskeletal system, which she attributes to osteoarthritis and carpal tunnel syndrome.  (R.

137-248; 296-330).[1]

By her own account, the pain in her knees awakens her during the night and prevents her from walking more than a quarter mile without a cane (R. 301, 307).[2]  Although she can tend to her basic needs, even simple tasks require frequent intermittent periods of rest. (96-101; 105-09).  When she sits or lies down, she must prop a pillow beneath her knee to keep it from hurting (R. 308).

Pain in her hands also awakens her during the night  (R. 313).[3]  Moreover, Parham testified, "[t]hey swell when I do stuff.  When I use them a lot, they swell real bad, and I can't close them" (R. 313).  She can no longer "tote heavy things, and she "drop[s] things all the

---

[1]     Medical records from pages 263 to 295 in the record were submitted to the Appeals Council after Administrative Law Judge Glay E. Maggard ["the ALJ"] issued his opinion.  Consequently, while they are part of the record on appeal, the court may not consider them in determining whether the Commissoner's decision is supported by substantial evidence.  *See*, *e.g.*, ***Falge v. Apfel***, 150 F.3d 1320, 1323 (11th Cir. 1998).  Nevertheless, the court is concerned that included among these records are *documents that do not even reference the claimant in this case*.  Several records Parham submitted from a Dr. Billy Walton (whom, incidentally, Parham did not list as a treating physician) and the North Mississippi Medical Clinics, Inc., belong to a Tammy *T.* Parham with a birth date of 25 November 1962 (the plaintiff's date of birth is 26 August 1962).  (R. 277-79; 282-83; 287-89; 290; 294).  A public records search confirmed that a Tammy T. Parham with that birth date lives in Mississippi.  The genesis of this error apparently lies with the medical records provider, but counsel for both parties are responsible for ensuring that the evidence in the record is correct, and the inclusion of another person's records from a non-treating physician is inexcusable.

[2]     Her testimony describing the pain in her knees is somewhat inconsistent.  On the one hand, she claims injections in her right knee eased the pain for a couple of months until her knee started "grabbing", and she described the pain as "pinching"  (R. 304).  She later stated that she "just can't put no pressure on my knee.  Sometimes it hurts so bad it - - I have to have support to do it."  (R. 309).

[3]     Parham underwent surgeries for carpal tunnel syndrome in 1991 and 1992.  (R. 137, 139, 158).

2

time.  I can't squeeze on a rag" (R. 314).  Regarding her weight, Parham testified that she weighed approximately 283 pounds but that her doctor noted a loss of four pounds at her last visit, which Parham claimed was typical (R. 314).

Although the problems with her hands began around 1991, and her knee problems started around 1998 (R. 305), she did not file for disability benefits until August 2002, and she claimed an onset date of August 2000.  Her initial application was denied (R. 31-32), and a hearing before the ALJ resulted in an unfavorable decision (R. 12-28).  After considering additional records submitted after the ALJ's opinion, the Appeals Council denied her request to review the ALJ's decision (R. 6-8).  Therefore, the ALJ's opinion became the final decision of the Commissioner, and Parham filed this timely lawsuit on 4 October 2004.

## II.    STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one.  Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Miles v. Chater*, 84 F. 3d 1397, 1400 (11ᵗʰ Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied,"  *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[4]  This is true despite the fact that "[s]ubstantial

---

[4]        In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla,
> and means such relevant evidence as a reasonable mind

evidence may even exist contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d

227, 230 (11th Cir. 1991).   "There is no presumption, however, that the Commissioner

followed the appropriate legal standards in deciding a claim for benefits or that the legal

conclusions reached were valid." *Miles*, 84 F. 3d at 1400 (citations omitted).


## III.   DISCUSSION

*A.*     *Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove

that he is disabled.   *See* **20 C.F.R. § 416.912 (2004)**.   The Act defines "disability" as the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."   **42 U.S.C. §**

**423(d)(1)(A) (2004)**.

The Social Security regulations provide a five-step sequential evaluation process for

determining if a claimant has proven that he is disabled.   *See* **20 C.F.R. § 416.920**.   The ALJ

must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler*,

736 F.2d 1467, 1469 (11th Cir. 1984); *Williams v. Barnhart*, 186 F. Supp. 2d 1192, 1195

(M.D. Ala. 2002).  The steps are as follows:

_____

might accept as adequate to support a conclusion. *See*
*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.
1420, 1427, 28 L.Ed.2d 842 (1971).

1.     If the claimant is working or engaging in substantial gainful activity, he is not disabled.  However, if the claimant is not working or engaging in substantial gainful activity, the court must consider whether the claimant has a severe impairment.

2.     If the claimant does not have a severe impairment, he is not disabled.  A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the court must then consider whether the impairment has lasted or is expected to last for more than 12 months.

3.     If a claimant's impairment has lasted or is expected to last for a continuous period of 12 months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled.  If neither of the above conditions, when considered in association with the continuity requisite of 12 months, is deemed true, the ALJ must go on to step four of the evaluation sequence.

4.     If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled.  If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

5.      If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 *et seq.* and/or 42 U.S.C. § 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration requirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R.  404.1520(a)-(f), 416.920(a)-(f).

**B.      Application of the Standard: the ALJ's Findings**

After discussing the legal standards and evidence in the record, the ALJ made the following findings:

1.      The claimant satisfied the insurance status eligibility requirements necessary to establish her potential entitlement to monthly Disability Insurance Benefits payments on her alleged onset date of August 31, 2000. She continued meeting such requirements only through December 31, 2001 (20 C.F.R. §§ 404.130 and 404.131);

2.      The record does not definitively establish the claimant's performance of any work at a level commensurate with substantial gainful activity since she alleged becoming disabled on August 31, 2000.

6

3.     The claimant possesses a combination of severe, functionally limiting physical impairments that impose more than minimal restrictions on her ability to function in some basic work-related physical activities. The claimant possesses no severe, functionally limiting mental impairments of any kind, i.e. of a lasting or projected duration of 12 continuous months. The claimant also possesses no singular or combined impairments of the presumptively disabling level of **medical** severity described in any particular section listed in Part A to Appendix 1, Subpart P, Social Security Regulations No. 4, i.e. Sections 1.01 or 6.01, *et seq.*;

4.     The claimant possesses the residual functional capacity to perform many of the elements of light work and a full range of sedentary work as referenced in the Regulations (20 C.F.R. §§ 404.1545, 404.1567, 416.945 and 416.947–also see SSR 83-10);

5.     The claimant's allegations of chronic, debilitating knee pain, stiffness, and swelling, pain and swelling in her hands, recurrent urinary incontinence, and other related symptoms affecting the regular functional usage of lower torso, legs, and arms cannot at all be considered credible to the extent described. First, a vast disparity exists between the alleged intensity and persistence of the claimant's symptoms and clinical test results and other objective medical evidence. Second, the opinions expressed by one or more of the claimant's own treating physicians, particularly an orthopedic surgeon, belie any such assertions. Third, the record does not document reliable manifestations of a disabling loss of functional capacity by the claimant secondary to such symptoms. Fourth, there are numerous gaps in the claimant's recorded medical treatment when the opposite would be expected of an individual experiencing daily disabling pain and other symptoms. Finally, the claimant's prior written statements regarding her activities and symptoms are

internally inconsistent and portray her as an individual who tends to over-emphasize the severity, frequency and duration of her physical complaints (20 C.F.R. §§ 404.1529 and 416.929);

6.    The claimant is no longer incapable of performing the light to medium demands of her vocationally relevant past work according [sic] to vocational expert testimony provided at the hearing (20 C.F.R. § 404.1565). The restrictions on the claimant's standing and walking throughout an 8-hour workday, e.g., no more than 4 hours combined, make her past work unavailable to her;

7.    The claimant still possesses the residual functional capacity to perform a wide range of physical elements of a light exertion described in the Regulations, except for repetitive pushing and pulling with the feet and legs, and prolonged to continuous periods of standing and walking beyond 4 hours per 8-hour workday (20 C.F.R. §§ 404.1545(b), 404.156(b), 416.945(b), and 416.967(b)). The claimant has been able to perform a full range of sedentary work ever since August 2000 (20 C.F.R. §§ 404.1567(a) and 416.967(a));

8.    The claimant is a younger individual of 41 years of age who possesses a limited 11th grade education and a GED certificate. She has worked in the past in unskilled and semiskilled employment, but retains no transferable work skills (20 C.F.R. §§ 404.1563, 404.1564, 404.1568, 416.964, and 416.968);[5]

9.    The claimant is able to make a successful vocational adjustment to significant numbers of sedentary jobs existing in the national economy with her individualized vocational characteristics (20 C.F.R. §§ 404.1566(b) and

---

[5]    Contrary to the ALJ's finding, Parham did not receive her GED. Nevertheless, the Vocational Expert considered her limited education when opining that she could perform jobs that existed in significant numbers nationally and regionally (R. 326-28).

416.966(b)).[6]   Vocational expert testimony establishes
the incidence of such work in significant numbers in the
national economy for a hypothetical individual similarly
situated to the claimant in all respects;

10.   The claimant's has [sic] not been under a "disability" for
any continuous period of twelve months as defined in the
Social Security Act at any time relevant to the present
decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(R. 27-28).   Thus, Parham survives the first four steps in the evaluation procedure, but she fails

the fifth step because her RFC permits her to perform a full range of sedentary work.

Parham disagrees and argues, generally, that the ALJ's decision is not supported by

substantial evidence in the record.   Specifically, Parham contends that the ALJ erred

1.   in his application of the two-part test established for evaluating a claimant's
subjective complaints (Doc. # 10, p. 12);

2.   by rejecting the pain assessment performed by one of her treating physicians
(Doc. # 10, p. 13); and

3.   by failing to evaluate her obesity properly (Doc. # 10, p. 13).

The court disagrees with Parham and finds that the ALJ's decision reflects a correct

application of law and is supported by substantial evidence in the record.   Therefore, the

Commissioner's decision is due to be affirmed.

## C.   *Analysis*

---

[6]   Her previous jobs included, primarily, "cashiering", food service worker and EKG
technician (R. 87, 303).

1.      **ALJ's Application of the Pain Standard.**

Parham contends that the ALJ erred when he discredited her "subjective pain allegations" (Doc. # 10, p. 14).  Her history of carpal tunnel syndrome, treatment for pain in her knees, evidence that she experienced pain and stiffness getting on and off an examining table, her weight and a notation from one of her treating physicians that "her pain was debilitating" "should satisfy the pain standard set fourth [sic] by the Eleventh Circuit." *Id.* Furthermore, the ALJ's reliance upon the fact that Parham engages in "some daily activities" in support of discrediting her claims was also error.  (Doc. # 10, p. 15).  The Commissioner contends that the ALJ properly applied the pain standard and that his decision to discredit Parham's complaints is supported by substantial evidence.

The two-part test established by the Court of Appeals for the purpose of evaluating a claimant's subjective complaints requires evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." ***Holt v. Sullivan***, 921 F.2d 1221, 1223 (11th Cir. 1991).  No weight need be given to subjective complaints that do not satisfy the pain standard.  *See*, *e.g.*, ***Butler v. Barnhart***, 347 F. Supp. 2d 1116, 1123 (M.D. Ala. 2003).  However, the ALJ must provide "explicit and adequate" reasons for discrediting the plaintiff's complaints. ***Wilson v. Barnhart***, 284 F.3d 1219, 1225 (11th Cir. 2002).

The ALJ correctly stated the pain standard, and he thoroughly discussed his reasons for giving Parham's subjective complaints no weight.  In doing so, he reflected, "What I am struck

10

more by in this case than anything else is the absence of objectively demonstrable medical evidence supporting the vast majority of the claimant's symptomatic complaints" (R. 21).   He noted further the lack of any evidence of a "physiological basis" for the severity of Parham's complaints regarding her knees and hands.   *Id.*   "[T]he absence of objective quantification of the claimant's alleged disabling pain and other symptoms is a central theme in this case supporting an adverse decision."   *Id.*   He then specified four reasons "to reject the overall credibility of the claimant's subjective account of disabling symptoms":

1.  lack of objective medical evidence supporting her claims;

2.  no "physical examination findings and other reliable manifestations of a disabling loss of functional capacity by the claimant secondary to her reported symptoms";

3.  "significant gaps" in her medical treatment; and

4.  the fact that she describes "symptoms of a degree of severity that often defies reason and logic."

(R. 22).

Although he acknowledged Parham's history of carpal tunnel syndrome and osteoarthritis in her knees, he noted that the records lack any indication that she has had problems with her wrists or hands since her surgeries in 1991 and 1992.   Despite being seen recently by "two treating orthopedic physicians and one consultative physician with credentials in occupational medicine . . .[,] [t]he only reference to carpal tunnel syndrome is in the past tense . . .." (R. 22).   The ALJ noted that her grip was considered normal, and her muscle

11

strength in her hands was "fully intact" (R. 23).

Regarding her knees, despite being diagnosed with mild "lost medial joint height in the right knee," "a very small plantar fascial spur" in her right foot, "patellofemoral crepitance in both knees", and "right heel pad irritation", the doctor providing such diagnoses "did not even prescribe medication" for her  (R. 22).  She later responded well to injections and declined surgery (R. 22).

In addition, a consultative examination in 2002 found "only mild crepitation during manipulation of her left knee.  In contrast to her subjective assertions, Ms. Parham could 'walk normal step, height, and length without any deviation from straight line.'  She could also perform requested tandem/heel to toe walking without" loss of her ability to control her muscular movements  (R. 23).

The ALJ found that Parham's descriptions of her limitations, including an inability to stand for more than five minutes, walk for more than ten, stoop or bend over to pick up a small object from the floor, get in or out of a bathtub without assistance, *inter alia*, "are completely at odds with objective medical evidence that documents only mild symptomatic difficulty with clearly non-disabling arthritis in her knees, i.e. [sic] and none documented in other major joints, including the left elbow or back as claimed on a few occasions."  (R. 24).  He continued, "[t]he descriptions also do not explain the claimant's failure to take regular prescribed medication for pain," and the records reflect "sporadic and limited treatment" that was "purely conservative."  (R. 24).

As the ALJ noted, the record indicates Parham's last complaint about either of her

12

wrists or hands was in 1992 following her second surgery for carpel tunnel syndrome. (R.
157). In May and July 2003, she complained of left side arm pain, but that was thought to be
cardiac related. (R. 235-45). Nevertheless, on her disability report, she described her
symptoms as follows:

> I have pain in both of my hands; they go numb (tingling and
> burning sensation). The pain starts in my fingers and sometimes
> courses up my elbow. This sometimes results in "twinges" on the
> bottom side of my arm - - - similar to an electric shock - - up to
> my elbow. I drop things that I try to hold; my grip has been
> drastically weakened. I wake up at night with an aching sensation
> in both arms.

(R. 83).

She also described her knee pain as follows:

> I have difficulty walking without assistance (walker). The pain
> affects me constantly; it is an excruciating constant ache
> (chronic). My knees "catch" when I walk. When this occurs, I
> can hear a scrubbing and popping sound in both knees. I cannot
> stand or walk for extended period [sic] of time.

(R. 83).

Parham first sought medical treatment for her knees in April 2001, approximately one
year after the date on which she actually began having problems, according to her benefits
application. (R. 69, 187). At that time, Dr. James White stated:

> She is having problems with her knees and her heel. She has put
> on weight. The knee gives her pain with going up and down stairs.
> The heel is tender right on the heel pad itself. She is not tender
> over the planta fascia and her heel cord doesn't appear to be tight.
> The knees are stable to medial and lateral stress. She has quad
> atrophy and loss of VMO mass. She has lateral tracking of the
> patella and marked exacerbation of pain with laterally directed

> force on the medial side of her patella and relief of pain with opposite-directed force. She has negative Lachman, Drawer and McMurray signs. The foot otherwise is unremarkable.
>
> I shot right knee films (AP lateral and patella sunrise views) and they show fairly normal bony anatomy and maybe some mild loss of medial joint height. I shot a foot films [sic]. AP lateral and oblique show a very small plantar fascial [sic] spur. Otherwise, it is unremarkable. Impression is patellofemoral crepitance with lateral tracking of the patella, right worse than left, and heel pad irritation. I told her she needs to lose weight. I told her about heel cord stretches and strengthening of the knee and also ice for her heel. We will check her back. [sic]

(R. 187). Dr. White did not prescribe pain medicine, and Parham did not see a doctor again until August 2002, when Dr. Fleming Brooks opined that she had osteoarthritis. Nevertheless, referring only to her right knee, Dr. Brooks noted that she had full range of motion and "no instability. She has significant medial joint line tenderness. There is no crepitation. There is pain with patellofemoral manipulation" (R. 201).

Dr. Brooks treated Parham with a series of Synvisc injections, after which she stated that she was "doing very well. At this point she has pain only on certain occasions. She does not think he [sic] pain is severe enough to warrant surgery" (R. 199). Two months later, Dr. Brooks noted that Parham stated that "her right knee is markedly better . . .. She is having some symptoms in her left knee but not as severe as in her right knee. . . . On exam she has a trace tenderness, full ROM. No crepitation." *Id.* He prescribed Clebrex for her arthritis and nothing for pain. *Id.* It is not clear whether Parham ever saw Dr. Brooks again, but in February 2003 he completed a physical capacities evaluation on which he noted that Parham did not require "an assistive device (excluding a prosthesis or leg brace) to ambulate *even minimally*

14

in a normal workday"  (R. 229) (emphasis added).

Her records lack any reference to her knees after Dr. Brooks' assessment.  Moreover, records from her most recent doctor visits fail to mention knee or leg problems either currently or as part of her history  (R. 235-45; 247).  That these visits were made to a doctor whom Parham had not previously seen makes this fact all the more significant.

Thus, substantial evidence, at least, supports the ALJ's finding that Parham's subjective complaints were unsupported by either objective evidence of pain or objective evidence of a condition "of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223.

His decision to discredit her complaints is further supported by evidence undermining Parham's credibility.  For example, in December 2002, Parham told Dr. Sam R. Banner, a consultative examiner, that x-rays of her knees revealed "bone on bone."  (R. 202).  No such finding exists in her records.  She also told the examiner that Dr. Brooks had prescribed a cane (R. 202).  However, Dr. Brooks had noted less than two months before that there was no crepitation and that Parham herself said she felt only occasional pain that was not severe enough to warrant surgery (R. 199).  Furthermore, as noted *supra*, Dr. Brooks not only did not prescribe a cane, but he specifically noted that Parham did not need one even on a minimal basis (R. 229).

Perhaps the most troubling inconsistency is reflected in statements Parham made regarding her weight.  On 22 August 2002, Parham, who then weighed 256 pounds, told Dr.

Brooks that she had lost approximately 50 pounds over the past several weeks  (R. 201).[7]  On 4 December 2002, she said the same thing to Dr. Banner, except that, according to the record, she was actually 18 pounds heavier.  (R. 203).[8]

Therefore  the  ALJ  properly  applied  the  pain  standard,  and  his  decision  to  discredit Parham's subjective complaints is supported by substantial evidence.[9]

### 2.     ALJ's Rejection of Parham's Treating Physician's Pain Evaluation

---

[7]     This claim by itself is questionable; the record does not indicate that her weight ever exceeded 300 pounds.

[8]     Thus, based on what Parham told her doctors, while following her doctor's diet and exercise recommendations over the course of approximately three months, she gained approximately 68 pounds, reaching a weight of 324 pounds, and then for a second time lost 50 pounds.

[9]     Parham argues that the ALJ erred by considering activities Parham engaged in, such as mowing the lawn on a riding lawn mower or grocery shopping, as evidence contradicting her subjective complaints.  This argument is without merit.  While an ALJ may not premise a denial of benefits based solely on a claimant's minimal day to day activities, *see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ is actually required to consider a claimant's daily activities when evaluating the claimant's credibility and RFC. **20 C.F.R. § 404.1529(c)(3) (2005)**; **Soc. Sec. Rul. 96-8p** (July 2, 1996); **Soc. Sec. Rul. 96-7p** (July 2, 1996); *see also Johnson v. Barnhart*, No. 04-14581, 2005 WL 1523499, at \*3 (11th Cir. June 29, 2005) (citing Social Security Ruling 96-7p);  *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (noting that while regulations do not generally treat daily activities as "substantial gainful activity", they do not preclude the "ALJ from considering daily activities" when determining a claimant's RFC); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) ("[T]he ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily activities, in making the finding about pain.");  *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1337-38 (M.D. Ala. 2001) (noting the propriety of considering a claimant's daily activities) that does not mean that the ALJ may not consider such activities at all.  In this case, Parham's home activities were but one of many factors supporting the ALJ's decision, as discussed *supra*.  Even without considering her activities, the ALJ's opinion is supported by substantial evidence.

16

Parham next contends that the ALJ erred by rejecting her treating physician's assessment of her pain (Doc. # 10, pp. 15-16).  By doing so, "the ALJ inserted his opinion for the pain that Ms. Parham would experience in place of [sic] Dr. Brooks who [sic] is a treating orthopedist."  *Id.*  The court agrees with the Commissioner that the ALJ's decision is supported by substantial evidence.

A treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . .." **20 C.F.R.§§ 404.1527(d)(2)(I); 416.927(d).**   When the ALJ determines that the treating physician's opinion is not entitled to controlling weight, he or she must take the following factors into consideration when deciding what weight to give the opinion:

(1) length of treatment relationship and frequency of examination;

(2) nature and extent of the treatment relationship;

(3) the supportability of the opinion given;[10]

(4) the consistency of the opinion;

---

[10]   The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.  Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.  We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 C.F.R. § 404.1527(d)(3).

(5) whether the treating physician is a specialist in a relevant area; and

(6) any other factors the claimant raises that "tend to support or contradict the opinion." **§§ 404.1527(d)(2)-(6); 416.927 (d)(2)-(6)**.

At the very least, in the Eleventh Circuit, treating physicians' opinions are accorded "substantial or considerable weight unless good cause is shown . . ..." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).   Good cause exists when, for example, "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."   *Id*. at 1241. The ALJ must state his or her reasons for the weight given the opinion.   **§ 404.1527(d)(2); 416.927(d)(2).**

In February 2003, shortly after treating Parham with the Synvisc injections, Dr. Brooks completed a physical capacities evaluation ["PCE"] and a pain assessment form ["PAF"].   On the PCE, Dr. Brooks stated that during the course of a normal, eight-hour workday, Parham could lift "20 lbs. occasionally to 10 lbs. frequently", sit for eight hours, stand or walk for four hours, and ambulate without an assistive device (R. 229). He also noted that she rarely could push or pull with her legs,[11] climb or balance, operate a motor vehicle or "work with or around hazardous machinery." *Id.*

However, he found that she was not limited in her ability to manipulate (neither gross

---

[11]        He did not limit her ability to push or pull with her arms (R. 229).

nor fine manipulation), bend and/or stoop, reach in all directions, or work in environments that may be harmful to persons with sensitive respiratory systems.  *Id*.  Finally, the PCE stated that she would miss two days of work per month "as a result of the impairments of treatment."  *Id*.

Notwithstanding these somewhat liberal restrictions, Dr. Brooks noted on a standard "Clinical Assessment of Pain" form that Parham's pain "is present to such an extent as to be distracting to adequate performance of daily activities of work" (R. 230).  In addition, he stated that "physical activity, such as walking, standing, sitting, bending, stooping, moving of extremities, etc." will result in "[g]reatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of task" [sic].  *Id.*[12]

The ALJ accepted Dr. Brooks' assessment of Parham's physical capacities but not his assessment of her pain.

> His [Dr. Brooks'] pain assessment does not account for the limitations with which she could work.  Stated differently, his pain assessment appears solely predicated on the claimant's otherwise subjective statements, as opposed to a reasonable estimation of the pain she would likely experience within the range of work restrictions still deemed compatible for her.

(R. 23-24).

As discussed *supra*, Parham's description of her pain is not supported by the objective medical evidence.  Therefore, Dr. Brooks' pain assessment, which appears to be based only on

---

[12]   With the severity of pain Dr. Brooks assigned, it is inconceivable that Parham would be able to sit, stand, walk, bend, stoop and reach to the extent he allowed for in his assessment of her functional abilities.  These seemingly contradictory conclusions may alone be enough to reject his pain assessment.  ***Craig***, 212 F.3d at 436.

Parham's subjective complaints,[13] is similarly unsupported.

Parham's lack of credibility further compromises the validity of assessments based on those complaints.  *See*, *e.g.*, ***Winkowitsch-Smith v. Barnhart***, 113 Fed. Appx. 765, 768 (9th Cir. 2004) (holding that medical findings should not be discounted simply because they are based on subjective complaints when the subjective complaints are credible); ***Craig v. Apfel***, 212 F.3d 433, 436 (8th Cir. 2000) (affirming ALJ's decision to discredit a pain assessment by a treating physician when that assessment was based on the claimant's subjective complaints).

For all of the foregoing reasons, the ALJ's decision to reject Dr. Brooks' pain assessment is supported by substantial evidence.[14]

---

[13]     Her medical records indicate that Dr. Brooks historically relied on Parham's own pain assessments, and there is no reason to believe he altered his methods for the purpose of providing a written assessment. (R 199-01).  Furthermore, the court questions whether Dr. Brooks' experience as an orthopedist qualifies him to make the kind of assessment called for on the form provided (which itself is broad, vague and ambiguous to such an extent that any effort at meaningful interpretation is effectively precluded (R. 230)).  After all, pain is inherently subjective.  *See*, *e.g.*, ***U.S. v. Rivera***, No. 95-2186, 1996 WL 338379, at *3 n.1 (1st Cir. 1996) (noting the subjectivity of pain); ***Williams v. Bowen***, 844 F.2d 748, 754 (10th Cir. 1988) (same).  Likewise, his training in orthopedics likely does not qualify him to assess how her subjective pain impairs her functional or cognitive abilities, studies of which are more traditionally undertaken by neuroscientists and psychiatrists.  While his experience may qualify him to opine that Parham's complaints of pain are generally consistent with her medical condition, his written assessment, in which he simply circled what he felt was the most appropriate prescribed choice, does not equate easily to such an opinion.

[14]     Contrary to Parham's suggestion, the ALJ's rejection of Dr. Brooks' pain assessment does not bind him to reject Dr. Brooks' assessment of Parham's functional limitations, which the ALJ implicitly found to be supported by objective medical evidence (R. 23).  Considering the ALJ's burden of establishing good cause for rejecting a treating physician's opinion, a thorough review of the record leads the court to conclude that the ALJ would have had much greater difficulty establishing good cause for rejecting Dr.

### 3. Parham's Obesity

Parham's skeletal argument that the ALJ failed to evaluate her obesity properly is without merit.   Although the ALJ looked to the incorrect Social Security Ruling for guidance on evaluating a claimant's obesity,[15] he nevertheless determined that her obesity was a severe impairment (R. 21) as is required by the correct ruling.   Soc. Sec. Rul. 02-01p.   Furthermore, he expressly considered the effects Parham's obesity had on her other alleged impairments, and his RFC was based in large part on the assessment provided by her treating physician, who was well aware of Parham's weight problem, which, according to  the evidence, she did little, if anything, to combat (R. 25).   Therefore, despite his erroneous citation to a superceded ruling, the ALJ complied, perhaps unwittingly, with the requirements of current binding precedent, and his decision that her obesity was not disabling is supported by substantial evidence in the record.

The final sentence in the paragraph in which the ALJ evaluated Parham's obesity provides a concise summary of the conclusions to be drawn from the evidence in this case. "The fact remains the claimant's musculoskeletal problems can be traced to no more than mild arthritic degeneration in her knees, a condition for which she does not even regularly take prescribed medication for pain, and a remote history of carpal tunnel syndrome that is clearly

---

Brooks' functional assessment.  The two assessments are contradictory, and the evidence supporting the ALJ's rejection of the pain assessment would necessarily undermine his decision to reject Dr. Brooks' functional assessment.

[15]   Neither party noted that Social Security Ruling 02-01p explicitly supercedes ruling 00-3p. **Soc. Sec. Rul. 02-01p**.

no longer active" (R. 25).

The ALJ correctly applied the law, and, in every respect, the ALJ's opinion is supported

by substantial evidence in the record.


## IV.   CONCLUSION

Therefore, for the reasons discussed herein, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

Done this 12th day of August, 2005.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE